Our final case for today is 2016-1011, Netlist, Inc. v. Diablo Technologies. It's really a good lesson for the court today. Mr. Panikowski, please proceed when you're ready. Good morning, Your Honors, and may it please the court. Netlist seeks reversal of the judgment on its breach of contract claim based on a single legal question. Did the party supply agreement prohibit Diablo's undisputed use of Netlist's isolation devices to make products for someone other than Netlist? Here's my biggest problem with your argument, is that you're essentially making, as you say, a legal argument as to the construction of the contract. Yes, Your Honor. And you had, at least initially, you had the district court on your side construing the contract much like you want it to be construed. Yes, Your Honor. So why didn't you either move for partial summary judgment with respect to the construction of the contract, or more importantly, ask the court to instruct the jury what the contract meant? Your Honor, Netlist did not move for partial summary judgment on that issue, in part because the trial was accelerated after the grant of the preliminary injunction. And then, Your Honor, there were various requests that were made to the district court to interpret the contract in a manner that would produce the result that Netlist believes is appropriate here. I give you that the trial court went back and forth with you about whether extrinsic evidence was necessary or whether the contract could be construed as unambiguous. The court was inclined to say it was unambiguous, but you never said to the judge, judge, instruct the jury. Put it in the jury instructions. And instead, you just tried the case wide open to the jury and allowed the jury to interpret the contract. So why haven't you waived any ability at this point to argue for a pure legal construction of the contract? Your Honor, Netlist has not waived the ability to ask for a pure legal construction of the contract because under this court's precedent in cases like Newell, N-E-W-E-L-L, when you have undisputed facts and you simply need to apply something that is a pure question of law to those undisputed facts, the court, not just the district court, but also the appellate court, may decide that issue as a matter of law. Netlist is not challenging the district court's failure to instruct the jury on a particular contract interpretation on appeal. Rather, what Netlist is challenging on appeal is the district court's denial of its motion for judgment as a matter of law. And on JMAL, it is appropriate, as this court has said, for a party to say, Your Honor, there is a legal principle here, and there are also a set of undisputed facts. When you apply this legal principle to the undisputed facts, the only proper result here would be, in this case, judgment for Netlist on the breach of contract claim. The fact that the jury reached a contrary decision does not prevent this court from ordering JMAL because under both this court's precedence and under California law, the question of the interpretation of a contract where it does not depend on the credibility of extrinsic evidence is always a question of law for the court to decide. Sometimes that question is decided on summary judgment. Sometimes that question is decided in the jury instructions. However, there is no law that requires— You can't wait until after trial to ask the court to construe the contract as a matter of law. Your Honor, there is no law that either party has cited that prohibits a party from asking the court to construe a contract as a matter of law after trial. Here, in addition to the construction that Netlist got in the preliminary injunction proceedings, there were repeated invitations to the district court to construe the contract as a matter of law. But for purposes of this appeal, it's not relevant whether such requests were made or the form in which such requests were made because it is always proper where there's no extrinsic evidence at issue and therefore no fact relevant to contract interpretation that the jury could have decided to say to the court afterward, Your Honor, we have undisputed facts that emerged on the record at the jury trial. We have a contract here which the court must interpret as a matter of law. Here is the correct interpretation, and under that interpretation, the undisputed facts compel judgment in our favor. Your Honor, the three contractual provisions which read together compel a finding of a breach as a matter of law here are found in the supply agreement between the parties. First, on appendix page A4919, section 2E2 contains a limited carve-out from Diablo's obligation not to make or sell any device constituting the Netlist chipset or Netlist technology for or to anyone other than Netlist. This carve-out, Your Honors, allows Diablo to use for third parties only one of the devices that make up the Netlist chipset. This device is the Diablo Standard Register. The second contract provision that's relevant here is on appendix page A4918. There, section 1 defines the Diablo Standard Register to mean, Isolation devices are not included in the definition of the Diablo Standard Register. Rather, they are separate devices that are separately identified in the definition of the Netlist chipset. Isn't the whole point, though, of this agreement that it was, as your friend on the other side puts it, it was Diablo who actually put the chipset on silicon? In other words, the implementation of the chipset was something that Netlist did not do and wasn't capable of doing. Yes, Your Honor. Netlist is a fabless semiconductor company, and they were looking for Diablo to actually inscribe and manufacture Netlist designs in silicon. And so you're saying that whether enabled or not, that there was nothing about the chipset that they had authority to use? Your Honor, that is not exactly what we're saying, because there is one thing about the chipset in terms of a physical device that Diablo was allowed to use, and that was the Diablo Standard Register, as defined in section 1. Section 7, which is the third relevant contractual provision, also gives Diablo rights to the implementation of the Netlist chipset in silicon, because Diablo, in the process of that, would be using and possibly creating techniques for actually creating this device. The exclusive provision prohibits them from selling or manufacturing the Netlist chipset and the Netlist technology, and that's defined. And the Netlist chipset, I think, if I understand it right, involves multiple components, an isolation device and the Standard Register. Is that right? That is correct, Your Honor. Okay, so if I say you're not allowed to sell TVs, are you allowed to sell chips that would be used in TVs? Your Honor, maybe yes and maybe no. It depends on how the contract is written. Do you see my problem? I mean, because I think I'm going right to the heart of it, which is they can't sell Netlist chipsets. But does that really mean they can't sell a component, which is part of but not a Netlist chipset? Your Honor, yes. In this case, it does mean that they cannot sell any component of the Netlist chipset, except for the Diablo Standard Register. And the reason, Your Honor, is when you read Section 2E2 as a whole and in conjunction with Section 7, what we have is an agreement that gave Diablo rights only in two things. And the remainder of those rights were reserved to Netlist. So we see that Section 2E2 says specifically that, quote, Diablo shall not sell or manufacture any device constituting. Are you on 7 now, or you're back on 2? Your Honor, yes. We're on Section 2E2 at page A4919. Yes. Any device constituting the Netlist chipset. For Netlist technology to or for any party except Netlist. So you have this phrase. But Netlist technology requires use of – has DXD and LRD requirements, correct? Yes, and Your Honor, on this appeal, we are not contending that Diablo's use of the isolation devices constituted use of the Netlist technology. That was an issue – But the Netlist chipset is defined by reference to Netlist technology. Your Honor, Netlist chipset as a whole does say, as you indicate, that the chipset solution is utilizing the Netlist technology. However, Section 2E2 doesn't simply say that Diablo cannot sell or manufacture the Netlist chipset. Rather, it says Diablo shall not sell or manufacture any device constituting the Netlist chipset. So that raises the question of what does the word constitute mean here? And sometimes constitute does mean be the equivalent of. Sometimes, Your Honor, constitute means being one of the parts of. In the sense that a bicycle may consist of a frame, a pedal, a chain, and wheels. And those four devices are devices constituting the bicycle. But that question was presented to the jury and the jury ruled against you. Your Honor, the questions of contract interpretation here are purely a question of law. And therefore, they're not questions that the jury itself may resolve. The court always has the ability, as the case is studied in our brief show, to, after the verdict, give a proper legal interpretation to the contract and then apply it to undisputed facts. But you have to be in a situation where the contract couldn't be interpreted in any way that would allow a reasonable juror to rule in your favor. And that seems to me to be a high hill to climb. Your Honor, we haven't seen any case that subjects the question of contract interpretation to a jury's findings. The substantial evidence standard does not apply to legal questions of contract interpretation, whereas here, there was no extrinsic evidence. But when you left the legal question, you did not press the legal question before the district court. And you allowed the jury to make these determinations. So you can't now, after the fact, get away from the fact that these are all intertwined. You can't simply say, oh, this can be decided as a matter of law, unless you can really say that there is no way this contract can be interpreted in a manner that would allow a reasonable jury to decide in your favor. Your Honor, that is not the case here. For one thing, Netless did press the district court to interpret the contract before the trial. There was some dispute in the party's post-trial motions below about whether Netless has specifically proposed a concrete jury instruction containing that interpretation. But there were numerous examples where, in other forms, Netless had asked the district court to interpret the contract. And the district court made clear, I'm not going to do that. I'm not going to tell the jury how this contract is interpreted. But the district court did note in one of its comments that, I guess that's why we have judgment as a matter of law, or something to that effect. So the district court was even acknowledging to the parties. I'd like to ask you to go back to your constitute example. Yes, Your Honor. And give me a good example about a bicycle. What was it? Can you say it again? Pedal, frame, chain, and wheels are all devices constituting a bicycle. OK. So those taken together constitute the bicycle. Yes, Your Honor. Or could you say a pedal constitutes a bicycle? Your Honor, I- That's what you're asking me to do here. That's the problem with your analogy. Your analogy is only good for exactly what it's good for, which is the sum of the parts taken together constitute the whole. But you can't say an individual part constitutes the whole. And that's the problem with the exact legal construction you're asking for, for the word constitute. Your Honor, I would not say that a pedal constitutes a bicycle. I agree with you about that. But I would say that a pedal is one of the devices constituting a bicycle. And the language we have here- But if the bicycle is defined as something that enables a user to ride down the street, then it has to have all of those pieces and parts in workable form, correct? Yes, Your Honor. And in the contract, netless chipset is defined as having the technology fully enabled. So if they use something that has the technology disabled or not enabled, then it doesn't constitute netless chipset, even under your analogy, correct? Your Honor, it is correct that what they would be doing wouldn't constitute the netless chipset in the sense of being equivalent to the netless chipset. But the part of the contract that is- If you take the wheels off the bike, you're not enabling someone to ride it down the street. That is correct, Your Honor. But there is one more portion of the contract that resolves for us this question of whether any device constituting the netless chipset must mean the whole thing or can mean a component, and that is the carve-out here. Provided that Diablo will be allowed to make, have made, use, design, manufacture, distribute, and sell to any third party the Diablo Standard Register. The Diablo Standard Register is merely a component of the netless chipset. There is no reason why the parties would have provided for this specific carve-out if Diablo was already allowed to use any component of the netless chipset, so long as it wasn't using the whole thing. And that, Your Honor, shows why this contract means that Diablo was not allowed to use the isolation devices, which were one of the devices constituting the netless chipset for anyone other than netless. Okay. Thank you, Your Honors. Well, we'll restore a little bit of rebuttal time for you. You've used all your time. Mr. Marino? Good afternoon, and may it please the Court. We urge this Court to affirm for three reasons. The first one is netless failed to satisfy the element of harm, which is independent from the element of wish. Can we just start where we left off with Mr. Panikowski, and in particular with Section 2E2, please? And can you tell me why he isn't right about 2E2? What is your argument about 2E2? In particular, right where he left off when he said, look, the word constituting might be confusing, but if the word constituting didn't allow for the consideration of the individual devices that make up the netless chipset, then there wouldn't be that providing language afterwards. That language would be completely superfluous if we didn't construe constituting the way he wants us to. So can you address that argument in particular, please? Sure. I will start with that, Your Honor. So first of all, I think the Diablo standard register is a right that was granted to Diablo to do. What needed to be proved, what netless needs to prove, is that Diablo did something the contract prohibited Diablo from doing. So whether Diablo also had another right is irrelevant. Now, I think the argument is treating the carve-out as in the claim construction sense. But the Diablo standard register is a completely separate device. It's one that actually can use, is licensed to use, part of the technology. It can use one of DXD or LRD rank multiplication or load reduction, but not both. So it's a completely separate animal from the rest of the contract. I think the better reading of section 2E2 and netless chipset is exactly what the court had propounded before, which is it requires both the register with the DXD LRD technology physically enabled, as well as the isolation devices, actually utilizing the netless technology, which is also defined in the contract as the load reduction rank multiplication technology. What does derivative of netless chipset mean in the definition of Diablo standard register? That is related. It's using the same silicon in this particular case. So what we're dealing with is two semiconductor devices that have standard circuitry that is specified by the JEDEC standard. That's the functionality of a standard register and the functionality of an isolation device, upon which netless has additional functionality, this load reduction and rank multiplication to be added. So the definition of netless chipset is very clear. It says if you turn on the standard functionality plus all of the netless additional functionality for load reduction and rank multiplication, you have a netless chipset, and that would be on both devices. But if you physically disable that additional functionality, and as a factual matter, that was something that was submitted to the jury with expert testimony on both sides, and those circuits are completely physically disabled, they cannot physically work, then you have a standard register on which there is no prohibition from Diablo to use in this contract. The only prohibition is you shall not use the netless chipset, which has all of this special functionality netless requested, physically enabled, and is being utilized by both the register as well as the isolation devices. What's your view about whether or not we could simply just disregard the fact that the jury entered a verdict here, and we can just say as a matter of law the contract should have been construed a different way, and there should have been essentially summary judgment? It shouldn't have been, Your Honor, and the reason is very simple. Under California law and Ninth Circuit precedent, the determination of whether the conduct of the party accused of breach violated the terms of the contract is a question of fact, not a question of law. And the only fact that netless relies on in its appeal is the use of the added chip. There was a very lively factual dispute that had to be tried to a jury on whether the prototypes that included the register, the added chip, and the added chips, physically disabled from performing DXCLRD, constituted the netless technology or the netless chipset. That was a factual determination for the jury to make. The only undisputed fact netless relies on is the use of the added chip, regardless of whether it constituted the netless chipset or the netless technology. So that would not have been sufficient. That factual dispute had to be tried to a jury. We had experts testifying on that issue. We had engineers from both companies testifying to that issue. And ultimately, even if you go back and look at the preliminary injunction order, the preliminary injunction order of the district court looked at that specific factual issue in assessing the likelihood of success on the merits. She said, and that's in the order, that after looking at the contract, there was evidence presented by netless experts saying that even though the register on the prototypes had been physically disabled, the expert believed that the functionality of load reduction, rank multiplication was still being performed by the device as a whole. There was a factual determination that the district court made in the preliminary injunction order and found netless was likely to succeed. Well, the court turned out to be wrong. The jury considered the same factual dispute with a much fuller record and found in favor of Diablo. And the district court on Jamal concurred with the jury, found that in fact Diablo had presented substantial evidence on the factual issues presented to the jury, and therefore there was substantial evidence to sustain the jury's verdict. So I think a trial was necessary in this case to resolve factual issues. Netless is not even challenging those factual determinations by the jury, so that is an independent basis to uphold the denial of Jamal by the district court. Now, if I may address briefly the issue of harm. Harm is a separate requirement under California law from conduct that is prohibited by the contract. It is a separate issue from damages. Damages might be the remedy once you've proven the three elements of a breach of contract claim, existence of a contract, conduct that violates the terms of the contract, and harm. The jury found against netless on the issue of harm. Netless did not appeal that portion, so they're not entitled to Jamal, even if this court were to agree with them on the second requirement. The third requirement of harm has not been satisfied. There was substantial evidence presented at trial to sustain the jury's verdict on harm. I'm confused by that argument. Are you saying that the mere fact that a contract is breached isn't enough under California law? Correct. Well, again, there are three requirements under California law. Existence of a contract, the fact that the party accused of breach either didn't satisfy an affirmative obligation or violated a negative covenant, and the plaintiff was harmed by that conduct. The third element here was not proven. It was submitted to the jury. There were competing arguments, factual disputes, as to whether, even if there had been a violation of the exclusivity provision, netless had actually been harmed by that conduct. Both fact and expert witness testified on that issue. It wasn't an issue that went away with the issue of breach. It was something that the jury had to pass on. In fact, if you look at the verdict form, there were special interrogatories, four, five, and six, that each addressed the three separate elements of the breach of contract causal action. They all had to be answered by the jury, and the jury did answer all three. By comparison, special interrogatories one, two, and three, on a separate breach of contract claim that is not on appeal, contain an instruction that say, if you're fine for the defendant on the first question, you can skip to question four. That was not done in the verdict form for the breach of the supply agreement, because there was an actual factual dispute between the parties that the jury had to resolve. Of course, if there are three requirements to satisfy a cause of action, it's a black-letter law that all three have to be satisfied by the plaintiff in order to prevail. In the reply brief, netless talks about damages, and the possibility of remand to assess the amount of damage. That's not the issue here. It was an actual legal requirement that the jury had to factually determine that netless had been harmed by Diablo's conduct. On that point, the jury sided with Diablo, and netless has offered nothing on appeal. Question six of the jury verdict was expressed and asked them to find whether there was harm or not. Exactly right. That's the issue of harm. Let me briefly address the issue of why this is a license and not an affirmative covenant. Section 2E2, the so-called exclusivity provision, is part of Section 2E, which is the license provision. In fact, if we look at that portion of the contract, it becomes very clear, because in 2E itself, it says that netless grants a license to Diablo subject to Section 2E2. Section 2E2 is just a condition, a limitation on the license that netless granted to Diablo to use netless perceived intellectual property rights. What is the result of exceeding the scope of a license? Well, you don't have a license. You don't have a license defense. But this was also a trade secrets case where netless did assert trade secret misappropriation, and the jury found that none of the asserted trade secrets were, in fact, trade secrets. Diablo won, and netless is not appealing that. So whether Diablo also had a license or not is moot. This is not an affirmative covenant that Diablo had an obligation to perform under. This was a condition for Diablo to obtain the license from netless. So even if the courts were to agree with netless for some reason on their arguments with respect to Section 2E2, that would simply mean that Diablo didn't have a license. Diablo prevailed on the underlying claim already, which is not an appeal. This issue is moot. Unless the court has any other questions. Well, I think, Mr. Marino, we have your argument. Thank you very much. Mr. Panikowsky. Thank you, Your Honor. I would like to make four points quickly on rebuttal. Okay, that's not happening. You actually used all of your time before. I'll give you two minutes. If you can make four points in two minutes, go. Yes, thank you, Your Honor. First, Diablo has not argued, nor has it supplied a case that says that this court is unable to decide the question that netless has presented as a legal issue under an over-review of the district court's Jane Wall ruling. Second, Diablo has not provided any explanation for why the provided that carve-out clause is in Section 2E2, unless the principle clause would otherwise prohibit Diablo from using the various devices that constitute the netless chipset, even when they're not part of the netless chipset as a whole. Third, in response to counsel's argument about harm, there are cases that netless has cited in its reply brief that show that even where there's not an express stop sign, a district court should disregard certain jury answers to special verdict interrogatories as superfluous. Examples of that are the Gerlanis case from the Third Circuit, as well as the McCollum case from the Fourth Circuit. And in this situation, Your Honor, the question five of the verdict form said, did Diablo breach the development and supply agreement? The jury answered no. Question six said, was netless harmed by, quote, that conduct? And the jury answered no, and then actually went on to run through an express stop sign to put in a zero-dollar answer to the damages question in question seven when it shouldn't have. Your Honor, once the jury found no breach, it could not have found that netless was harmed by, quote, that conduct, because the breach is the only thing that that conduct could refer to, and the Fifth Circuit's decision in Carr explains why it is that in a situation like this, you would need a remand for determination of harm. And fourth and finally, Your Honor, the supply agreement is not just a license. It's a supply agreement with affirmative obligations. Diablo breached them here, and netless asked the court to reverse. Thank you, Your Honors. He's very impressive. You got through all four points. Okay, we'll take this case under submission, and I thank both counsel for a helpful argument. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.